Eastern District of Kentucky
FILED

APR 25 2023

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

Civil Action No. _____

UNITED STATES OF AMERICA, *ex rel.*
RIKKI POPE, SAMANTHA CARROLL
and LEANNA MURPHY                                                    **PLAINTIFFS**

v.

ADDICTION RECOVERY CARE, LLC                                         **DEFENDANT**

SERVE:    Jessica A. Burke
          3010 Taylor Springs Drive
          Louisville, Kentucky 40220

---

### NOTICE TO CLERK TO FILE UNDER SEAL

---

**THE FOLLOWING COMPLAINT SHALL BE FILED UNDER SEAL**

**PURSUANT TO 31 U.S.C.A. § 3730(B)(2).**

**DO NOT FILE ON PACER UNLESS UNSEALED BY COURT ORDER.**

ARNOLD & MILLER, PLC

Christopher D. Miller, Esq.
121 Prosperous Place, Suite 6B
Lexington, KY 40509
Phone:  859-381-9999
Facsimile:  859-389-6666
Email: cmiller@arnoldmillerlaw.com

COUNSEL FOR RELATORS

## CERTIFICATE OF SERVICE

On April 25, 2023, a copy of this *Qui Tam* Complaint filed under seal pursuant to

31 U.S.C. § 3730(b)(2), was served upon the following:

Hon. Carlton S. Shier, IV
Hon. Christine Corndorf
United States Attorney
260 West Vine Street, Suite 300
Lexington, KY 40507-1612
*Via hand-delivery*

Hon. Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave. N.W.
Washington, DC 20530
*Via USPS Registered Mail*

Counsel for Relators

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
Civil Action No. _____

UNITED STATES OF AMERICA, *ex rel.*                                    PLAINTIFFS,
RIKKI POPE;
LEANNA MURPHY; and,
SAMANTHA CARROLL

v.

ADDICTION RECOVERY CARE, LLC                                         DEFENDANT.

SERVE:      Jessica A. Burke
            3010 Taylor Springs Drive
            Louisville, Kentucky 40220

---

## *QUI TAM* COMPLAINT

---

Pursuant to the Federal False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, the relators, Rikki Pope ("Pope"), Leanna Murphy ("Murphy") and Samantha Carroll ("Carroll"), individually and on behalf of the United States of America (U.S.A.), state the following *qui tam* complaint, against the Defendant, Addiction Recovery Care, LLC ("ARC").

<u>PARTIES</u>

1.      Pope (Realtor) is a resident of Louisa, Lawrence County, Kentucky. Pope is currently the Billing Supervisor for ARC and has first-hand personal knowledge of the fraudulent schemes described below; the billings made to Medicaid for services performed under the fraudulent schemes; and that Medicaid has actually paid ARC's fraudulent claims.

2.    Carroll is a resident of Cynthiana, Harrison County, Kentucky. Carroll was formerly employed by ARC and has first-hand knowledge of ARC's fraudulent schemes described below.

3.    Murphy is a resident of Danville, Boyle County, Kentucky. Murphy was formerly employed by ARC and has first-hand knowledge of ARC's fraudulent schemes described below.

4.    Defendant ARC is a Kentucky limited liability company with its principal place of business listed with the Kentucky Secretary of State as 125 South Main Cross Street, Louisa, Kentucky 41230. ARC may be served with process through its agent, Jessica A. Burke at 3010 Taylor Springs Drive, Louisville, KY 40220. ARC has physical work locations throughout this judicial district and conducts business operations on a daily basis within Fayette County, Kentucky, which subjects ARC to the jurisdiction of the United States District Court, Eastern District of Kentucky.

<u>JURISDICTION AND VENUE</u>

5.    Jurisdiction in this court is proper pursuant to 31 U.S.C. §§ 3732(a), 3730(b), and 28 U.S.C. § 1331.

6.    The court may exercise personal jurisdiction over the Defendant, and venue is proper in this court because the acts alleged herein are proscribed by the FCA and took place in part in this district and the Defendant transacted business in this district. At all relevant times herein, ARC provided addiction recovery services in various counties in the Commonwealth of Kentucky, including Fayette County, Kentucky. The U.S.A. made payments, directly or indirectly, for benefits under Medicaid to ARC for services provided in this district.

7.      Pursuant to 31 U.S.C. § 3730(b)(2), Relators prepared and filed under seal the instant complaint and served the original complaint on the Attorney General of the United States, the United States Attorney for the Eastern District of Kentucky, and a statement of all material evidence and information in their possession, of which they are the original source. The disclosures contained in the complaint are supported by material evidence known to Relators and others, which will be identified during discovery, at the time of filing and establish the existence of Defendant's false and fraudulent claims. Because the disclosure statement includes communications and work product of Relators' attorneys, and was submitted to federal officials in their capacity as counsel for the U.S.A. -- a potential and real party in interest in this action -- Relators understand this disclosure to be confidential and exempt from disclosure under the Freedom of Information Act. 5 U.S.C. § 552; 31 U.S.C. § 3729(c).

<u>FACTUAL ALLEGATIONS</u>

*CDTC/HAZEL HILLS BILLING*

8.      Pursuant to 31 U.S. Code § 3729, *et seq.*, any person who (a) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or, (c) conspires to do either of the foregoing, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461), plus 3 times the amount of damages which the Government sustains because of the act of that person.

9.    ARC, through its agents and employees, regularly and knowingly made and submitted, and continues to make and submit, to the government, false and fraudulent records, statements, and claims for payment, as detailed below.

10.    The Kentucky Cabinet for Health and Family Services, Department for Medicaid Services, has a responsibility to administer the Medicaid program in Kentucky. KRS 205.520(3) authorizes the cabinet, by administrative regulation, to comply with any requirement that may be imposed or opportunity presented by federal law to qualify for federal Medicaid funds. 907 KAR 15 establishes the provisions and requirements regarding Medicaid program coverage of behavioral health services (including substance use disorder treatment).

11.    ARC is a participating addiction recovery services provider in federally-funded healthcare programs including Medicaid. The fraudulent practices discussed herein involved reimbursements under Medicaid.

12.    Kentucky administrative regulations regarding the reimbursement of substance use disorder treatment services through Medicaid authorize reimbursement for behavioral health services (provided by individual providers, provider groups, behavioral health multi-specialty groups, and health services organizations); targeted case management for individuals with a substance use disorder; services provided by residential crisis stabilization units; and, outpatient chemical dependency treatment center services. *See 907 KAR 15:010 – 15:080.*

13. ARC has only one Certified Drug Treatment Center ("CDTC") called Hazel Hills CDTC. This is an intense detox/inpatient center that more severe cases enter to get

detoxed or leveled out on medication before going on to treatment. They provide more intense treatment that is monitored by medical staff at all times.

14.    Since the beginning of 2023, every telehealth clinical group (H2027) for every center in Addiction Recovery Care is billed to one of 5 major Medicaid vendors (Aetna, UHC, Passport, Humana, and Anthem) under Hazel Hills CDTC. ARC knowingly requires its employees to replace the actual facility name where the group services were provided with Hazel Hills CDTC, as if the services were actually provided at Hazel Hills, when they were in fact not provided there.

15.    Pope, ARC's current billing supervisor, was directly told by her superiors that ARC does not actually have a CDTC contract with Medicaid and that they are not supposed to bill that way, but, was required by ARC to submit such billings anyway. Pope was directly told by her superiors that the reason ARC was billing these telehealth groups under the Hazel Hills center is because ARC gets paid three times the amount of a normal telehealth clinical group because Hazel Hills is CDTC certified, while the other facilities where some services were actually performed are not. ARC's employees, including Pope, are required to falsely document and report to the government and others where the group services were provided in order to do this.

16.    Pope has first-hand knowledge that bills were submitted for payment under this fraudulent scheme, and that they were actually paid by the U.S.A., at the higher, fraudulent rate.

*Fraudulent Peer Support Billing*

17.    ARC bills its peer support groups per unit. Each unit is 15 minutes and worth $25. ARC's typical peer support groups are 1 hour or 2 hours but can range anywhere in

Page 7 of 12

between that. Upon intake, however, peer supports are required to give a 1 hour session, which is typically an individual session. When Crown Recovery Center opened, ARC brought every intake client in at once and put them in a gym. This was hundreds of individuals fresh off the streets and from jail. Because peer supports are the most overworked and underpaid staff members, they were short on staff to handle such a large crowd, as there are state regulations on how many people can be in a group per peer support specialist. More times than not, ARC peer supports are so overwhelmed with groups that they are asked to forge spending time with clients and document for them even though they were never seen. For example, but by no means exclusively, on April 17, 2021, at Crown Recovery Center, a group of intakes were brought in, and Murphy was required by her superior to forge peer support notes for all of them because there was no help. Each client in that group was billed for 1 hour (4 units = $100) of peer support services that were never actually held individually.

18. Pope has first-hand knowledge that bills were actually submitted to the U.S.A. under this fraudulent billing scheme, and that they were actually paid by the U.S.A. under this fraudulent scheme.

*Fraudulent signing of physician-providers' notes*

19. At ARC's facilities, hundreds of patients can be seen in a day's time. One particular physician-provider who signs off on medical notes, Dr. Michael Fletcher, was notorious for going weeks without signing off on anything, thereby causing back-up in the billing department. On most occasions, Dr. Fletcher, asked employees who had no medical degree or training, or who were not even in the medical department, to use his pin number set up in KIPU to sign all of his documents at once, as if he had reviewed and

signed them himself. Carroll, along with several other employees in the intake department, were required to do this very thing on many occasions. These fraudulent statements and records were then submitted with billings to the U.S.A., and were paid by the U.S.A.

*Illegal Medication Administration*

20.    At ARC, regular staff members, some in recovery – some not, are asked to distribute medications on a regular basis and log them under the client's chart as if administered by a qualified individual. At first, this just started out to be psychiatric medications, comfort medications and other essential medications.

21.    As ARC grew bigger, it became a Medication Assisted Treatment (MAT) program, as defined under federal and Kentucky law. This meant that ARC would now also be offering Suboxone to clients. The Suboxone was supposed to be administered by medical staff only according to federal and state regulations. ARC promised its non-medical staff, including those who were themselves in recovery from opioid abuse, that they would never have to be around or administer this medication, as it could lead them to relapse. However, ARC eventually required its non-medical staff, including Relators Murphy and Carroll and others who were themselves in recovery, to crush up and administer Suboxone to its clients. This practice violated 201 KAR 9:270 and 42 CFR 8:12. Claims for these services were then submitted to the U.S.A. for payment under this improper and fraudulent scheme, and, such bills were actually paid by the U.S.A.

22.    Many of the former and current employees know of several people and situations where a staff member in recovery, or even an intern (an individual who is still in treatment) was improperly required to administer the Suboxone to clients. Following

the actual administration of the medication, a properly licensed and/or trained medical staff would come in later that day, or the next day, and sign off as if he/she had actually administered the medication, as required by law. This increasingly happened during the Covid epidemic.

23.     In addition to being fraudulent, this illegal practice was directly related to staff triggers and relapses, as staff were found to be taking the Suboxone out of the cabinets when not prescribed. These practices also resulted in the intense relapse of one staff member who was made to give the Suboxone out to clients, who also then died of an overdose on Suboxone after years of sobriety.

*Changing Modifiers of Billing Codes*

24.     In the last month or two before the filing of this Complaint, Pope has been required by ARC to "test" claims for certain clients in a couple of different outpatient centers regarding their Targeted Case Management claims. ARC is going back for these clients and changing the modifiers from "HO HF" to "TG HF," thereby fraudulently indicating a higher level of substance/mental health issues that are not factually correlated to the diagnosis codes or assessments in their medical charts. After Pope complies with this request, Pope's supervisor then fraudulently changes the CPT (billing) code so that ARC charges $600.00 for the service instead of the usual $435.00. The fraudulent billing is then submitted to the U.S.A. and paid by the U.S.A.

25.     Based on the personal knowledge of the Relators, including Pope, ARC intends to continue making false statements and records, as described hereinabove, and submitting them to Medicaid, with the expectation that the same will be paid.

WHEREFORE, Relators respectfully request this court enter judgment against the Defendant, as follows:

A.      Award to the United States damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this *Qui Tam* Complaint, as the Federal False Claims Act, 31 U.S.C. §3729 et seq., provides;

B.      Impose civil penalties of $11,000 for each and every false claim that Defendant caused to be presented to the United States and/or its grantees, and for each false record or statement that Defendant made, used, or caused to be made or used that was material to a false or fraudulent claim;

C.      Award to Relators all available damages permitted by 31 U.S.C. § 3730(h)(2) and for damages permitted for violations alleged in ¶¶ 68 & 69, *supra*;

D.      Award attorneys' fees, costs, and expenses that Relators necessarily incurred in bringing this action;

E.      Award to Relators the maximum amount allowed pursuant to the False Claims Act;

F.      Trial by jury; and,

G.      Any such other relief as it deems proper.

Respectfully Submitted,
ARNOLD & MILLER, PLC

Christopher D. Miller, Esq.
121 Prosperous Place, Suite 6B
Lexington, KY 40507
Phone:  859-381-9999
Facsimile:  859-389-6666
E-Mail: cmiller@arnoldmillerlaw.com
COUNSEL FOR RELATORS

## CERTIFICATE OF SERVICE

On April 25th, 2023, a copy of the foregoing *Qui Tam* Complaint filed under seal

pursuant to 31 U.S.C. § 3730(b)(2), was served upon the following:

Hon. Carlton S. Shier, IV
Hon. Christine Corndorf
United States Attorney
260 West Vine Street, Suite 300
Lexington, KY 40507-1612
*Via hand delivery*

Hon. Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave. N.W.
Washington, DC 20530
*Via USPS Registered Mail*


_____
Counsel for Relators